IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  16-cv-02113-CMA-MJW

TROY ANDERSON,

Plaintiff,

v.

COLORADO DEPARTMENT OF CORRECTIONS "CDOC",
RICK RAEMISCH, Executive Director, CDOC,
TRAVIS TRANNI, Warden,
JILL LAMPELLA, Dr.,
CHRIS ESTEP, Dr., and
L. TAFOYA, Warden,

Defendants.

---

REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (DOCKET NO. 23)

---

**Michael J. Watanabe**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by Judge Christine M. Arguello on September 26, 2016. (Docket No. 13.)

Now before the court is Defendants Colorado Department of Corrections, Chris Estep,

Jill Lampella, Rick Raemisch, Laura Tafoya, and Travis Tranni's Motion to Dismiss.

(Docket No. 23.) The court has carefully considered the motion, Plaintiff's response

(Docket No. 41), and Defendants' reply. (Docket Nos. 42.) The court has taken judicial

notice of the court's file and has considered the applicable Federal Rules of Civil

Procedure and case law. The court now being fully informed makes the following

findings of fact, conclusions of law, and recommendation.

# I. BACKGROUND

### a. Relevant Facts

The court will attempt to briefly summarize the relevant facts contained in

Plaintiff's 55-page handwritten Amended Complaint. (Docket No. 21.) The court

assumes these facts and allegations are true for purposes of a motion to dismiss.

Plaintiff is a prisoner who has been confined in the Colorado Department of

Corrections ("CDOC") since 2000. (*Id*. ¶ 2.) He has been diagnosed with several mental

health issues, including attention deficit/hyperactivity disorder, anxiety, depression, anti-

social personality disorder, intermittent explosive disorder, and an organic brain

dysfunction that affects his ability to function on a daily basis. (*Id*. ¶ 22.) Due to his

mental illnesses, Plaintiff has been placed in administrative segregation and restrictive

housing for indefinite periods of time, and has been incarcerated at several different

facilities, including Colorado State Penitentiary ("CSP"), Centennial Correctional Facility

("CCF"), Sterling Correctional Facility ("SCF"), San Carlos Correctional Facility (SCCF),

and Fremont Correctional Facility ("FCF"), where he currently resides.

In 2010, Plaintiff filed a lawsuit in this district (Case No. 2010-cv-1005-RBJ-KMT)

protesting the condition of his confinement in CSP, where he had been held in

administrative segregation for over ten years. On August 24, 2012, following a trial to

the court, Judge Jackson concluded that CSP's failure to provide reasonable access to

the out of doors and outdoor exercise constituted a violation of Mr. Anderson's Eighth

Amendment rights. *Anderson v. Colorado*, 887 F. Supp. 2d 1133, 1142 (D. Colo. 2012)

(hereinafter "*Anderson I*"). He also directed CDOC to appoint a physician to reexamine

Plaintiff, evaluate his mental health treatment, review his medical records, and "take whatever steps he or she concludes are appropriate in his or her medical judgment. This may or may not include any medication change." *Id.* at 1145. Judge Jackson ordered that Plaintiff was to have "access for at least one hour, at least three times per week, to outdoor exercise in an area that is fully outside and that includes overhead access to the elements, e.g., to sunlight, rain, snow and wind, unless inclement weather or disciplinary needs make that impossible." *Id.* at 1157. On April 7, 2015, Judge Jackson, issued an order denying Plaintiff's Motion to Enforce Judgment, stating that "[a]lthough it took a while, the Court's orders have been implemented and then some."*Anderson v. Colo. Dep't of Corr.*, No. 10-CV-01005-RBJ-KMT, 2015 WL 1593884, at *5 (D. Colo. Apr. 7, 2015) (hereinafter "*Anderson II*").

Immediately thereafter, Plaintiff alleges that Defendants began to discontinue Plaintiff's successful treatment plan, over the protests of Dr. Bryce Wilson, Plaintiff's treating physician. (Docket No. ¶¶ 72-73.) On July 20, 2015, Plaintiff was transferred from SCF, where he had been receiving outdoor exercise, to CCF. He went on hunger strike beginning on July 25, 2015 to protest the transfer and discontinuation of his medical treatment. (*Id.* ¶ 76.) Defendant Estep, a licensed psychologist, was aware of the hunger strike but did not inform any authorities. (*Id.* ¶ 77.) After the hunger strike ended eleven days later, Plaintiff was placed for five days in what he terms a "cold cell" where lights were always on, the temperature was cold, and noise of the intake area made it difficult to sleep. (*Id.* ¶ 81.) He was then moved to the infirmary for one day, before returning to a regular cell. (*Id.* ¶ 82.)

On August 11, 2015, Defendant Estep prepared a "fraudulent" report that essentially reversed the successful mental health treatment plan that had been implemented. (*Id*. ¶ 84.) Plaintiff also alleges that Defendant Estep refused to allow Plaintiff to make legal calls, and went so far as to impersonate an attorney. (*Id*. ¶¶ 79, 85.)

On September 10, 2015, Plaintiff was transferred back to CSP. (*Id*. ¶ 87.) He returned to harsher conditions than those he faced prior to his earlier lawsuit. (*Id*.) Defendant Tranni, the warden of both CCF and CSP, approved the transfer, and Plaintiff was placed in Restrictive Housing Maximum Security, even though it is prison policy to not place seriously mentally ill prisoners there. (*Id*. ¶¶ 87-88.) Throughout his stay at CSP, Plaintiff unsuccessfully tried to obtain mental health treatment; he was even denied a television, despite the recommendation of Dr. Darren Lish, CDOC's Chief of Psychiatry, that he be permitted one to distract him from obsessive thoughts. (*Id*. ¶¶ 89-90.)

In late September 2015, Plaintiff's arm was caught in his cell door. (*Id*. ¶ 90.) He was denied treatment for his injuries for several days. (*Id*. ¶ 90.)

Plaintiff's counsel sent Defendant Raemisch a letter on December 4, 2015, expressing concerns that Judge Jackson's order was not being complied with regarding Plaintiff's access to direct sunlight and mental health treatment. (*Id*. ¶¶ 89-92.) It was ignored. (*Id.*)

On December 11, 2015, Plaintiff was transferred to SCCF. (*Id*. ¶ 94.) Plaintiff was denied bedding for four days, a shower for a week, and legal calls for 17 days. (*Id*.)

He was denied all access to direct sunlight for the entirety of his stay at SCCF, even though the facility has outdoor recreation cages. (*Id*. ¶ 98.) Plaintiff also had difficulty receiving appropriate mental health treatment. He wanted a reinstatement of an earlier, successful treatment plan created by Dr. Shepard, but Defendant Estep's diagnoses were used instead. (*Id*. ¶¶ 100-103.) He blames Defendants Raemisch and Tafoya, the latter of whom is SCCF's warden, for these conditions.

Plaintiff was transferred to FCF on August 22, 2016. (*Id*. ¶ 108). He has access to direct sunlight, better conditions, and a mental health treatment plan, although he remains concerned that it could be taken away from him again. .(*Id*.)

### b. Procedural History

Plaintiff filed his Amended Complaint (Docket No. 23) on November 9, 2016, against six named defendants: Colorado Department of Corrections, Rick Raemisch, Travis Tranni, Jill Lampella, Chris Estep, and Laura Tafoya.

Plaintiff asserts six claims for relief:

(1) a 42 U.S.C. § 1983 claim for cruel and unusual punishment under the Eighth Amendment against Defendants Raemisch, Tranni, and Tafoya for their failure to provide outdoor exercise;

(2) a 42 U.S.C. § 1983 claim for failure to provide adequate mental health treatment under the Eighth Amendment against Defendants Raemisch, Tranni, Tafoya, Lampella, and Estep;

(3) a 42 U.S.C. § 1983 claim for retaliation under the First Amendment against Defendants Raemisch, Tranni, Tafoya, and Estep;

(4) a claim for violation of the Americans With Disabilities Act, 42 U.S.C. §

12101) ("ADA"), against Defendant CDOC;

(5) a claim for violation of the Rehabilitation Act, 29 U.S.C. § 794, against

Defendant CDOC; and

(6) a 42 U.S.C. § 1983 claim for deliberate indifference under the Eighth

Amendment against Defendants Raemisch and Tranni based on Plaintiff's

injuries from the cell door closing on his arm.

Defendants request that Plaintiff's Amended Complaint be dismissed under Rule

12(b)(6) and under the doctrine of qualified immunity. (Docket No. 23.)

## II. STANDARDS OF REVIEW

### a. *Pro Se* Plaintiff

Plaintiff originally proceeded *pro se*, and the Amended Complaint (Docket No.

21) is a *pro se* pleading.[1] The court, therefore, reviews this pleading "liberally and

hold[s][it] to a less stringent standard than those drafted by attorneys." *Trackwell v.

United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a *pro

se* litigant's "conclusory allegations without supporting factual averments are insufficient

to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110

(10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not

been alleged, or that a defendant has violated laws in ways that a plaintiff has not

alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,

459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74

---

[1] Plaintiff was appointed counsel on January 13, 2017. (Docket No. 29.) For whatever reason, Plaintiff's appointed counsel did not move to amend his complaint.

(10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### b. Failure to State a Claim Upon Which Relief Can Be Granted

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two

prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### c. Qualified Immunity

Section 1983 of Title 42 of the United States Code allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law. *See* 42 U.S.C. § 1983; *see also West v. Atkins*, 487 U.S. 42, 48 (1988). To assert a claim under § 1983, Plaintiff must show (1) that he had a right

secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law. *Hall v. Witteman*, 584 F.3d 859, 864 (10th Cir. 2009). The doctrine of qualified immunity "shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (quoting *Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1255 (10th Cir. 1998) (internal quotation marks omitted)). Qualified immunity is an affirmative defense to § 1983 liability. *See Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). Once a defendant asserts the defense, the plaintiff must demonstrate that qualified immunity is not proper by showing that "(1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation." *DeSpain*, 264 F.3d at 971 (quoting *Baptiste*, 147 F.3d at 1255).

## III. ANALYSIS

### a. Mootness (Claims One and Two)

Defendants argue that Claims One and Two of Plaintiff's Amended Complaint should be denied as moot because Plaintiff concedes he now has access to outdoor exercise and that he is currently satisfied with his mental health treatment plan. Plaintiff argues that Defendants can deny him mental health treatment and access to court-mandated outdoor recreation at any time.

The mootness doctrine incorporates two aspects: (I) whether the issues are live; and (ii) whether the parties have a legally cognizable interest in the outcome. *See*

*Lucero v. Bureau of Collection Recovery*, *Inc.*, 639 F.3d 1239, 1242 (10th Cir. 2011). The critical question in determining these two aspects is "whether granting a present determination of the issues offered will have some effect in the real world." *Kennecott Utah Copper Corp. v. Becker*, 186 F.3d 1261, 1266 (10th Cir.1999). When circumstances change such that the court is unable to grant effective relief that has some effect in the real world, a live case or controversy no longer exists and the case is, therefore, moot. *See McKeen v. U.S. Forest Serv.*, 615 F.3d 1244, 1255 (10th Cir. 2010). Demonstrating that a case is moot is a heavy burden and lies with the party alleging that the action is moot. *See id.*

There are, however, exceptions to the mootness doctrine. Thus, even if an action appears moot on its face, a court will refrain from dismissing the action when certain circumstances are present. The generally recognized exception that is relevant to this case is where the defendant voluntarily ceases an alleged illegal practice, but is free to resume it at any time. *See Riley v. INS*, 310 F.3d 1253, 1256–57 (10th Cir. 2002). "[V]oluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (citation omitted).

Here, Plaintiff filed his original Complaint (Docket No. 1) on August 19, 2016. He was transferred from SCCF, where he alleges he did not receive outdoor exercise or mental health treatment, to CCF, where he currently is placed, on August 22, 2016. It is possible that the two events are completely unrelated. However, at this time, it is not

clear or obvious to the court that this is the case. Moreover, it appears true that Plaintiff could be transferred to another facility, such as SCCF or CSP, at any time and for whatever reason. Accordingly, the court finds that Plaintiff's Claims One and Two are not moot.

### b. Claim One

Claim One alleges that Defendants Raemisch, Tranni, and Tafoya denied Plaintiff access to outdoor exercise in violation of the Eighth Amendment. Defendants contend that this claim fails as a matter of law because Plaintiff does not establish that the defendants personally participated in any denial of outdoor exercise, which is necessary to hold them liable as prison supervisors. Plaintiff argues that his Amended Complaint sufficiently establishes supervisory liability.

### 1. Supervisor Liability

Supervisory liability "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, or implements a policy which subjects, or causes to be subjected that plaintiff to the deprivation of any rights secured by the Constitution." *Brown v. Montoya*, 662 F.3d 1152, 1163–64 (10th Cir. 2011) (citation and alterations omitted). However, Section 1983 does not authorize liability under a theory of respondeat superior. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, to establish supervisory liability, a plaintiff must show that "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation."

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). The plaintiff must show an "affirmative link" between the supervisor and the constitutional violation. *Id.* at 1195. The requisite showing of an "affirmative link" between a supervisor and the alleged constitutional injury has three related prongs: (1) personal involvement, (2) a causal connection to the constitutional violation, (3) and a culpable state of mind. *See Schneider v. City of Grand Junction Police Dep't.*, 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability).

With this in mind, the court turns to Plaintiff's claim. Claim One alleges that (1) Defendant Tranni was responsible for assigning him to CSP, where he knew Plaintiff would not have outdoor recreation; (2) Defendant Raemisch was aware of the unconstitutional conditions and ignored Plaintiff's requests for a meeting; and (3) Defendant Tafoya, as warden of SCCF, was responsible for Plaintiff's denial of outdoor recreation at that facility.

The court finds that Claim One adequately alleges personal participation by Defendant Tranni but not as to Defendants Raemisch or Tafoya. Plaintiff alleges that Defendant Tranni was personally involved in the decision to transfer him to CSP, where Defendant Tranni knew that, in violation of Judge Jackson's order, Plaintiff would not have access to direct sunlight. (*See* Docket No. 21 ¶ 88-89.) And once he was transferred to CSP, Plaintiff was, in fact, denied outdoor exercise. This is enough to state a claim against Defendant Tranni.

However, Plaintiff only makes conclusory allegations that Defendant Raemisch was involved in any of Plaintiff's transfers between facilities. Indeed, it is unclear how

Tranni *and* Raemisch can both be responsible for his transfer to CSP, as Plaintiff apparently believes. And in his Amended Complaint, Plaintiff alleges that his transfer to CCF was ordered by Defendant Lampella. (Docket No. 21 ¶ 75.) Moreover, Defendant Raemisch's mere awareness that Plaintiff has been involved in ongoing litigation does not give rise to liability, nor does the fact that he did not meet with Plaintiff to discuss is placement in CSP.

As to Defendant Tafoya, Plaintiff does not allege that she was personally involved in denying Plaintiff access to outdoor facilities. Although Plaintiff's Amended Complaint is unclear on this point, it appears that SCCF has outdoor recreation cages or "dog runs" that would allow direct sunlight, but Plaintiff was denied access to them. Plaintiff does not allege that Defendant Tafoya was in any way responsible for this decision. Thus, Plaintiff has not sufficiently alleged personal participation on the part of Defendants Raemisch and Tafoya, and the court recommends that Claim One be dismissed as to these Defendants.

### 2. Qualified Immunity

The question remains whether Defendant Tranni's actions violated a "clearly established" constitutional right. While Plaintiff's Eighth Amendment rights were violated when he was denied outdoor access for twelve years, he was only deprived of outdoor exercise at CSP for four months. The Tenth Circuit recently held that Defendants Raemisch and Tranni were entitled to qualified immunity against suits by prisoners who were deprived of outdoor exercise for eleven months and for two years and one month, respectively. *See Apodaca v. Raemisch*, No. 15-1454, slip op. at Parts III-IV, ⸺ F.3d

——, ——, 2017 WL 3138361 (10th Cir. July 25, 2017) (to be published); *Lowe v.*

*Raemisch*, No. 16–1300, —— F.3d ——, ——, slip op. at Part 2(d) (10th Cir. July 25,

2017) (to be published). The Court of Appeals stated that Judge Jackson's order in

Plaintiff's earlier case did not preclude qualified immunity due to the difference in the

length of the deprivation, the fact that a district court ruling is not controlling, and

because Defendants Raemisch and Tranni's knowledge of Judge Jackson's order was

immaterial given the standard is "whether it would have been clear to a reasonable

officer that the alleged conduct 'was unlawful in the situation he confronted.'" *Apodaca*,

2017 WL 3138361, at *6; *Lowe*, 2017 WL 3138609 at *5 (both quoting *Ziglar v. Abbasi*,

582 U.S. —— (2017)).

With this guidance, the court must find that competent officials could reasonably

disagree about the constitutionality of disallowing outdoor exercise for a period of four

months. Therefore, Defendant Tranni did not violate a clearly established constitutional

right and is entitled to qualified immunity.

For these reasons, the court recommends that Plaintiff's Claim One be

dismissed.

### c. Claim Two (Deliberate Indifference)

Claim Two alleges that Defendants Raemisch, Tranni, and Tafoya failed, in their

supervisor capacity, to ensure that Plaintiff had adequate mental health treatment.[2]

Plaintiff also alleges that Defendants Lampella and Estep were deliberately indifferent

---

[2] Although Plaintiff also alleges that Defendant Lampella failed to properly
supervise her employees, his claim against this defendant is more properly interpreted
as one for direct deliberate indifference. Therefore, the court will address it below.

to his serious medical needs. Specifically, Plaintiff claims that Lampella is liable for discontinuing his prior treatment, and Estep for fraudulently preparing a report that stripped away his diagnoses and for failing to alert CCF medical staff about Plaintiff's hunger strike.

### 1. Personal Participation

For reasons similar to those described above, the court finds that Plaintiff's claim should be dismissed as to Defendants Raemisch, Tranni, and Tafoya for failure to plausibly allege personal participation. Plaintiff's Amended Complaint contains no allegations that Defendant Raemisch was personally involved in any aspect of Plaintiff's mental health treatment, apart from being aware of Plaintiff's mental health conditions and prior litigation and his overall responsibilities as Executive Director of the Department of Corrections. Similarly, Defendant Tafoya's involvement is limited to her role as warden, and Plaintiff fails to plausibly allege that she was personally involved in the denial of mental health treatment, bedding, showers, or "legal property or calls" while Plaintiff was incarcerated at SCCF. Indeed, Plaintiff alleges that "John and or Jane Doe staff approved these conditions." (Docket No. 21 ¶ 94.) Defendant Tafoya cannot be vicariously liable for the actions of these unnamed subordinates. Accordingly, the court recommends that Claim Two be dismissed as to Defendants Raemisch and Tafoya.

Plaintiff alleges that Defendant Tranni personally participated in denying him mental health treatment by being involved the decision to place Plaintiff in Restrictive Housing Maximum Security, which went against CDOC policy of not placing seriously mentally ill prisoners in this level of confinement. (*See* Docket No. 21 ¶ 87.) However,

Plaintiff makes no allegation that Defendant Tranni played any role in providing medical care to prisoners; it is uncontested that Tranni was an administrator, not a doctor. Instead, Plaintiff states that he was denied mental health treatment "by staff" who relied on Defendant's Estep's "fraudulent report," which indicates medical personnel were making the decision regarding Plaintiff's treatment. Finally, Defendant Tranni's refusal to allow Plaintiff to have a television does not amount to a constitutional violation. Therefore, Claim Two should be dismissed as to this defendant.

### 2. Deliberate Indifference

A prison official's deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The Eighth Amendment test for deliberate indifference requires the satisfaction of both an objective and subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (internal quotations and citations omitted). First, the objective component requires that the prisoner "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* A medical need is sufficiently serious if "it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* Second, the subjective component is satisfied when a prison official has a culpable mind, meaning that the official "knows of and disregards an excessive risk to inmate health or safety." *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). The Tenth Circuit has emphasized that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference. Deliberate indifference requires more than mere negligence."

*Sealock*, 218 at 1205. The subjective component is "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (internal citations and quotations omitted). The subjective component "presents a high evidentiary hurdle to the plaintiffs: a prison official must know about and disregard a substantial risk of serious harm. . . . A claim is therefore actionable only in cases where the need for additional treatment or referral to a medical specialist is obvious." *Id.* at 1232. A prison official acts with deliberate indifference "only if he knows that inmates face substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. "[A]n inadvertent failure to provide medical care does not rise to a constitutional violation." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009) (internal quotations and citations omitted).

### I. Mental Health Treatment

The court finds that Plaintiff's mental illnesses constitute a serious medical need. Thus, the objective component is met.

Turning to the subjective component, the court must first address Plaintiff's misinterpretation of Judge Jackson's orders. While Plaintiff is absolutely entitled to adequate medical care, including mental health treatment, Judge Jackson never ordered that a specific treatment plan be followed. Indeed, he stated that the court "was not in a position to second-guess the medical judgment of his physicians with respect to medication prescribed for" Plaintiff, but only directed that a "CDOC physician without

previous contact with Mr. Anderson . . . take a fresh look at his medication and treatment needs." *Anderson II*, 2015 WL 1593884, at *1. That evaluation was completed. *See id.* Therefore, the mere fact that Plaintiff's treatments or diagnoses were changed does not automatically equate to wrong-doing.

This affects Plaintiff's claims against Defendants Lampella and Estep. Plaintiff complains that Lampella failed to follow the treatment plan created by Dr. Wilson, and disagrees with the methods and result of Estep's evaluation. However, an inmate is only entitled to receive a medical examination; he is not entitled to a diagnosis he likes. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976); *Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 811 (10th Cir.1999) ("[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."); *Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) ( "The prisoner's right is to medical care—not to the type or scope of medical care which he personally desires.") "A difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983." *Coppinger*, *id.* Other than his four-month stay at CSP (and neither Lampella nor Estep seem to be involved in his treatment at that facility), Plaintiff does not allege that he was denied medical treatment, just that he was denied his preferred treatment. For example, at SCCF, he admits that he had four clinicians assigned to him in his eight month stay. (Docket No. 21 ¶ 100.) It is obvious that his real problem at that facility was that medical staff "refused to . . . reinstate Dr. Shepard's court ordered finding." (Docket No. 21 ¶ 101.) Plaintiff does not plausible allege that Defendants Lampella and Estep denied him medical treatment.

Therefore, he has not stated an Eight Amendment claim for deliberate indifference.

## ii. Hunger Strike

Plaintiff alleges that Defendant Estep violated his constitutional rights by deliberating ignoring his hunger strike and its consequences. Plaintiff alleges that he told Estep that he was going on a hunger strike, and that Estep observed Plaintiff's condition while he engaged in the hunger strike, including witnessing him stumble and fall. (*Id.* ¶¶ 76 & 78.) Plaintiff alleges that Estep did not notify any other medical staff of Plaintiff's hunger strike, which violated prison policy, and that he "made no report to treat, help, or intervene." (*Id.* ¶ 78.)

The only resulting harm from Plaintiff's hunger strike was weight loss, weakness, and dehydration. While "[p]rison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death[,] . . . if weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern." *Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011). Moreover, Plaintiff's allegation that he was in a life-threatening condition is belied by the fact that he remained in the infirmary for one day. (Docket No. 21 ¶ 82.)

Plaintiff seemingly recognizes this weakness in his claim, and attempts to get around the fact that he was the author of his dehydrated and weakened state by arguing that his hunger strike was a direct consequence of his deteriorating mental condition. This may be so, but his worsening condition cannot be laid at the feet of

Defendant Estep. Plaintiff admits that upon being transferred to CCF, he "immediately told [Estep] that he was going on a hunger strike to protest the transfer . . .." (*Id.* ¶ 76.) However, Estep was not responsible for the transfer to CCF (that was Defendant Lampella) or his condition (he performed his evaluation after Plaintiff arrived at CCF). Accordingly, he cannot be liable for an Eight Amendment violation under a deliberate indifferent theory.

### d. Claim Three (Retaliation)

Plaintiff's Claim Three is a retaliation claim against Defendants Raemisch, Tranni, Tafoya, and Estep. Prison officials may not retaliate against an inmate for exercising his constitutional rights. *See Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). To state a retaliation claim Plaintiff must demonstrate (1) that he was engaged in constitutionally protected activity, (2) that Defendants' actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) that Defendants' adverse actions were substantially motivated as a response to Plaintiff's constitutionally protected activity. *See Allen v. Avance*, 491 F. App'x 1, 6 (10th Cir. 2012). "Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier v. Dubois*, 922 F.2d 560, 562 n.1 (10th Cir. 1991).

Here, Plaintiff alleges that the was retaliated against for engaging in the prior litigation, which is a constitutionally protected activity. Plaintiff claims that Defendants engaged in a deliberate, consistent pattern of denying him access to the law library,

legal calls, and "legal property" at multiple facilities. He also states that he was denied basic staples like bedding, mattresses, and showers at SCCF.

The claims against Defendants Raemisch, Tranni, and Tafoya are based on their supervisor positions, but Plaintiff utterly fails to allege that they personally participated in the activities at issue. In fact, Plaintiff blames things like his placement in the "cold cell" at CCF and his difficulties in accessing his "legal properties" to "John or Jane Doe Staff at both CCF and SCCF." (Docket No. 21 ¶ 149.) In short, Plaintiff offers no "affirmative link" between these supervisors and the constitutional violations.

Plaintiff claims that Defendant Estep retaliated against him by denying him medical treatment and also refusing requests for legal calls. It is unclear to the court how a doctor such as Defendant Estep would have the authority to deny Plaintiff access to legal property or phone calls. Further, Plaintiff's allegation that Defendant Estep "impersonated an attorney in an attempt to lure [Plaintiff] for testing" (*Id.* ¶ 149) is both implausible and insignificant. Plaintiff also offers nothing but mere allegations that Defendant Estep's actions were motivated by Plaintiff's prior lawsuit. Finally, Estep's did not fail to provide medical treatment, as discussed above, so that cannot form the basis for retaliatory liability.

Accordingly, the court recommends that Claim Three be dismissed.

### e. Claims Four and Five (ADA and Rehabilitation Act)

The ADA prohibits discrimination by public entities on the basis of disability. The Rehabilitation Act prohibits such discrimination by recipients of federal funding. To state a claim under the ADA and/or the Rehabilitation Act a "plaintiff must allege that: (1) he

is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability." *Robertson v. Las Animas County Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir.2007). State prisons are public entities covered by Title II of the ADA. *See Penn. Dep't of Corrs. v. Yeskey*, 524 U.S. 206, 209 (1998).

Assuming without deciding that Plaintiff is a qualified individual with a disability, the court is unable to discern what CDOC services, programs, or activities Plaintiff alleges he was denied the benefit of due to his mental illnesses. Defendants seem to assume that these claims are based on the alleged denial of proper mental health treatment, and points out that purely medical decisions ordinarily do not fall within the scope of the ADA. *See Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005)*; Rashad v. Doughty*, 4 Fed. App'x. 558, 560 (10th Cir. 2001) ("the failure to provide medical treatment to a disabled prisoner, while perhaps raising Eighth Amendment concerns in certain circumstances, does not constitute an ADA violation."); *Anderson I*, 848 F. Supp. 2d at 1300 (noting that the ADA and the Rehabilitation Act do not provide a private right of action for substandard medical care).

In contrast, in his response, Plaintiff only cites Judge Jackson's 2012 Order that acknowledged that the lack of appropriate treatment prevented Plaintiff from taking advantage of opportunities to progress out of administrative segregation. This argument is unavailing, however, because the CDOC ended the use of indefinite long-term administrative segregation prior to the filing of this suit. *See Anderson II*, 2015 WL

1593884, at *3 (D. Colo. Apr. 7, 2015). Therefore, Judge Jackson's reasoning is inapplicable to the facts at hand.

Plaintiff has failed to state a claim for relief under the ADA or Rehabilitation Act. Therefore, the court recommends that Claim Four and Five be dismissed.

### e. Claim Six (Deliberate Indifference )

Plaintiff's final claim for relief is brought under the Eighth Amendment against Defendants Raemisch and Tranni. It is a scattershot claim that centers on the injuries Plaintiff sustained when a cell door closed on his arm, but also mentions his hunger strike, his mental health treatment, and his placement in restrictive housing. In his response, Plaintiff only addresses the incident with the cell door, and maintains that he has asserted a facially plausible claim for supervisory liability.

This claim fails as a matter of law as to Defendant Raemisch. Plaintiff does not allege that he knew that there was a defective cell door or that Plaintiff had been injured by the door.

Turning to Defendant Tranni, while Plaintiff alleges that Defendant Tranni was aware that CSP cell doors malfunctioned, this, at best, amounts to mere negligence. Under the deliberate indifference standard set forth above, Plaintiff was required to plausibly allege both that Tranni was aware of the facts from which the inference could be drawn that the door in Plaintiff's cell constituted a substantial risk of serious harm, but also that Tranni in fact drew that inference. Plaintiff does not sufficiently allege the latter. His Amended Complaint fails to establish that Defendant Tranni consciously disregarded the safety risk posed by the door that closed on Plaintiff's arm. A general awareness of that this was a problem in the facility is not enough to state a claim. As to

Plaintiff's treatment after he door closed on his arm, Plaintiff does not allege that Tranni was aware that the incident happened or that Plaintiff suffered injuries, and therefore he cannot be liable for deliberate indifference or failure to treat.

## IV. RECOMMENDATION

Based upon the foregoing, it is hereby **RECOMMENDED**

- that Defendants Colorado Department of Corrections, Chris Estep, Jill Lampella, Rick Raemisch, Laura Tafoya, and Travis Tranni's Motion to Dismiss. (Docket No. 23.) be **GRANTED**, and

- Plaintiff's Amended Complaint (Docket No. 21) be **DISMISSED WITH PREJUDICE**.


**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);**

***Talley v. Hesse***, 91 F.3d 1411, 1412-13 (10th Cir. 1996).


                                        BY THE COURT

Date:  August 21, 2017             s/ Michael J. Watanabe
       Denver, Colorado            Michael J. Watanabe
                                   United States Magistrate Judge